IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. |
| v. | |
| $4,815,369.94 IN TOTAL FUNDS SEIZED FROM 130 ACCOUNTS MAINTAINED AT BANK OF AMERICA, MORE PARTICULARLY DESCRIBED IN ATTACHMENT A, | |
| Defendants. | |

## VERIFIED COMPLAINT FOR FOREFEITURE

COMES NOW plaintiff, United States of America, and shows the Court the following in support of its Verified Complaint for Forfeiture:

### NATURE OF THE ACTION

1.     This is a civil forfeiture action against over $4 million in total funds seized from 130 different Bank of America accounts by the U.S. Secret Service on or about March 9, 2022, pursuant to a Federal seizure warrant, arising from a conspiracy to defraud consumers, financial institutions and merchant service providers across the United States.

1

2.     The defendant property, including the specific Bank of America account from which specific funds were seized ("Subject Accounts"), is more particularly described in Attachment A and is referred to collectively hereinafter as "Defendant Funds."

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.     This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1395 because the property is located in this district.

6.     The Defendant Funds currently are held in a secure account maintained by the U.S. Secret Service ("USSS").

## BASIS FOR FORFEITURE

### Relevant Statutes

7.     The Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because they are or were derived from proceeds traceable to

violations of 18 U.S.C. § 1349 (conspiracy to commit wire fraud and bank fraud, 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1028 (identity fraud).

8.    The Defendant Funds also are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they constitute property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957 (money laundering), or is property traceable to such property.

## Factual Background

### I.   Relevant Terms, Entities and Individuals

9.    A merchant service provider, also known as a third party payment processor, is a company that provides bulk payment processing services to merchants who typically accept payment from customers via credit, Automated Clearing House ("ACH") debits and other electronic forms of payment.   A merchant typically must apply to the merchant service provider to open an account.  A merchant service provider typically holds back, or reserves, a portion of the funds that it processes for the merchant as "chargebacks" in the event that a customer might dispute a payment to a merchant.   Most merchant service providers close a merchant's account when there are excessive chargebacks.   Chargebacks are considered

excessive when they exceed the greater of one percent (1%) of monthly transactions or 100 chargebacks in one month.

10.    A merchant services account is an account offered by financial institutions to merchants for the receipt of electronic transmissions of funds from a merchant service provider.

11.    Bank of America ("BOA") is a financial institution insured by the Federal Deposit Insurance Commission, with branches in multiple states and territories, that offers personal and commercial banking services, including merchant service accounts.

12.    Humboldt Merchant Services ("Humboldt") is a merchant service provider based in California.

13.    Negative option plans are a category of commercial transactions in which sellers interpret a customer's failure to take an affirmative action, either to reject an offer or cancel an agreement, as assent to be charged for goods or services.  Negative option plans also are known as continuity plans, free-to-pay plans or nominal-fee-to-pay plans.

14.    Private Label Skin, LLC dba Hashtag Fulfillment ("Hashtag Fulfillment") is a warehouse/distribution center based in St. Petersburg, Florida that markets itself as a third-party logistics company that manages,

manufactures and fills orders for products.   In or around January 2020, Hashtag Fulfillment entered into an Assurance of Voluntary Compliance with the State of Florida, Office of the Attorney General, Consumer Protection Division, related to its business of manufacturing and/or fulfilling customers' internet sales of skin care products and other products through negative option plans during the period between May 2016 through 2018.   *See In the Matter of : Private Label Sk.in, NA LLC, d/b/a Hashtag Fulfillment, Private Label Skin, and Quality Harbor*, AG Case No.: L17-3-1094.

15.   At all times relevant herein, Angelita Heredia was a resident of Rex, Clayton County, Georgia.   Ms. Heredia was the Chief Executive Officer and Secretary of Clear Financial Advising, a domestic profit corporation organized in the State of Georgia.   Clear Financial Advising advertises itself as a full services accounting firm performing accounting, business management, tax and advisory engagements.

16.   At all times relevant herein, Karen Mondragon was a resident of New Mexico.

17.   At all times relevant herein, Dawn Vandyke was Karen Mondragon's daughter and was a resident of New Mexico.

18.   At all times relevant herein, Jared Esguerra was a resident of Florida.

19.     At all times relevant herein, Kevin Stark was a resident of Colorado.

20.     At all times relevant herein, Daniel Tanjeloff was a resident of New York.

21.     At all times relevant herein, Kyle Hunt was a resident of Florida.

*II. Overall Conspiracy and Fraud Scheme*

22.     The USSS investigation revealed as follows:

23.     In or around 2016, the following six corporate entities were established in the State of Wyoming and ultimately owned and operated by the individuals named below:

| Business Name | Owner and Operator | Business Location |
|---|---|---|
| Rigpa Management Consulting LLC | Karen Mondragon | Santa Fe, New Mexico |
| Saturn Management Consulting LLC | Dawn Van Dyke | Santa Fe, New Mexico |
| Biolife Medica LLC | Jared Esguerra | Miami, Florida |
| American Lifestyle | Kevin Stark | Highlands Ranch, Colorado |
| Skin Scientific LLC | Daniel Tanjeloff | New York, New York |
| Body Mind Media LLC | Kyle Hunt | Ft. Lauderdale, Florida |

**A. The Straw Companies and Nominal Owners**

24.     In furtherance of the conspiracy, each of the individuals identified above, and other known and unknown co-conspirators, referred to collectively hereinafter as "organizers," also created, or caused to be created, other corporate entities, mainly in the form of limited liability companies.  These

6

corporate entities, including the corporate entities that owned the Subject Accounts, shall be referred to hereinafter as "straw companies."

25.     The organizers attempted to conceal their involvement in the straw companies by recruiting other persons to act as the owners. Specifically, the organizers recruited friends, family members, and acquaintances, among others, to be the so-called owners of these straw companies. Such individuals shall be referred to hereinafter as "nominal owners."

26.     In exchange for "owning" a straw company, the nominal owners agreed to provide their personally identifiable information ("PII"), such as names, dates of birth and social security numbers, to the organizers for the creation of the straw companies.

27.     The organizers also opened, or caused to be opened, accounts with financial institutions, including Bank of America, in the names of the straw companies.

28.     USSS traced over 300 accounts at Bank of America to the organizers and various straw companies associated with the organizers.

29.     Some of the accounts were opened using the nominal owners' PII, without the nominal owners' knowledge or consent.

30.     The nominal owners had no real involvement in the straw companies.

31.   The nominal owners also had no access to the straw companies' bank accounts.

32.   The investigation revealed that the straw companies had no employees, no assets, no legitimate business expenses, such as payroll and/or tax payments, and existed only as bank accounts.

33.   The organizers also opened, or caused to be opened, accounts with merchant service providers, including Humboldt, in the names of the straw companies.  Some of the accounts were opened using the nominal owners' PII, without the nominal owners' knowledge or consent.

34.   The organizers maintained complete and exclusive control over the straw companies and the associated bank accounts and merchant service accounts.

35.   The organizers sent the nominal owners money on a monthly basis, ranging from a few hundred dollars to $2,000 per month.  The amount primarily depended on the number of bank accounts and merchant service accounts the organizers were able to open based on the nominal owners' PII and credit history.  Some of the nominal owners did not have any knowledge that the organizers were using their PII and credit history to open such accounts.

## B.  The Scheme to Defraud Consumers

36.  The straw companies marketed and sold—exclusively online—personal care products, such as "natural" herbal remedies, supplements and beauty products, to the public.

37.  The organizers entered into agreements with Hashtag Fulfillment to manufacture and/or fill the internet orders for these products.

38.  The organizers advertised the products online and represented that consumers could receive a free trial period of the products by paying only a one-time shipping fee of $4.95 that would be charged to the consumers' credit or debit cards.

39.  The organizers, however, knew that the representation that there only would be a one-time charge to a consumer's credit or debit card was false.

40.  Indeed, after the free trial ended, the organizers continued to charge small amounts to the consumer's credit or debit card on a repeated basis without the consumer's authorization or knowledge.

## C.  The Use of Merchant Service Providers to Further the Scheme

41.  As discussed above, in furtherance of the scheme, and in order to handle the large volume of electronic transmissions of payments from consumers, the

organizers applied for accounts with merchant service providers, including
Humboldt, in the names of the straw companies.

42.   The organizers made false misrepresentations on some of the applications
to Humboldt and others that the nominal owner was the true owner of the
straw company.

43.   In some cases, the organizers also included the nominal owner's PII on the
applications to open accounts with merchant service providers in the name
of the straw companies, without the nominal owner's authorization,
knowledge or consent.

44.   By using merchant service providers to process these numerous, small-
dollar transactions, the organizers were able to immediately process the
unauthorized charges that they caused to be made to consumers' credit or
debit cards before the chargebacks became excessive and before consumers
complained to their financial institutions and caused the merchant service
providers to claw back the funds.

**D. The Organizers Monitored the Subject Accounts and Immediately
Transferred the Fraudulent Proceeds to Avoid Chargebacks**

45.   The investigation revealed that virtually all of the funds in the straw
companies' Bank of America accounts, including the Defendant Funds,

exclusively constituted, derived or were traceable to consumers' payments for personal care products sold by the straw companies through Hashtag Fulfillment.

46.  In furtherance of the conspiracy, and to make certain that the straw companies' accounts were not drained by chargebacks from complaining consumers, the organizers also monitored, or caused others to monitor, the accounts on a regular basis.

47.  Specifically, the organizers immediately transferred, or caused others to immediately transfer, the fraudulent proceeds from the Bank of America accounts, including the Subject Accounts, to other straw companies' Bank of America accounts and/or to the six organizers' accounts identified in Paragraph 23, above: Rigpa Management Consulting LLC, Saturn Management Consulting LLC, Biolife Medica LLC, American Lifestyle, Skin Scientific LLC, and Body Mind Media LLC.

48.  Almost all of the fraudulent proceeds, besides monthly payments made to the nominal owners and other minimal debits and withdrawals, ultimately were transferred to the organizers' Bank of America accounts.

49.  Despite the large number of accounts at issue, the investigation revealed that only a small group of individuals, including Angelita Heredia, accessed

and monitored the hundreds of Bank of America accounts linked to this scheme, including the Subject Accounts.

50. The investigation revealed that the email address, and its associated internet protocol ("IP") address, associated with Ms. Heredia's business, Clear Financial Advising, accessed hundreds of bank accounts involved in this scheme on several occasions, including each of the Subject Accounts.

51. The investigation also revealed that Ms. Heredia and Clear Financial Advising, and the other persons who monitored the Bank of America accounts, were associated with the organizers, specifically, with Karen Mondragon and Rigpa Management.

52. None of the accounts accessed by Ms. Heredia are held in her name.

53. Ms. Heredia is not a signer on any of these bank accounts.

54. None of the nominal owners interviewed by USSS knew Ms. Heredia or had heard of her name.

### E.  Consumer-Victims of the Scheme

55. USSS interviewed numerous consumer-victims of this fraudulent scheme who all provided substantially the same information:

- The consumer saw an online advertisement for a "free trial" for an eye cream, skin cream, or other personal care product.

- The consumer provided his or her credit or debit card information to pay—what the advertisement represented was a—one-time $4.95 fee for shipping.

- The consumer learned that his or her credit or debit card had been subsequently charged multiple times for the products, without his or her approval or knowledge.

- Many of the consumers were not able to contact the straw company in order to cancel the continuing charges.

- The consumers' financial institution cancelled the credit or debit card to end the unauthorized charges.

56. Below are allegations involving four specific consumer-victims who demonstrate the similarities of the consumer-victims' experiences related to the straw companies:

*Consumer-Victim W.D.*

57. In or around 2018, W.D., a resident of Orange Park, California, noticed unauthorized charges on his card for a streaming service and came to believe that his card had been compromised.

58. Upon notifying the bank of the unauthorized charges, his card was canceled, and a new card was issued to him.

59.    However, at around the same time, W.D. received skin care products for two consecutive months, specifically, an eye rejuvenating serum and anti-wrinkle face cream, that neither he nor his wife had ordered.

60.    The investigation confirmed that W.D.'s card was charged twice on April 9, 2018, each charge in the amount of $94.91 for "cream," and twice on April 10, 2018, each charge in the amount of $89.90 for "serum."

61.    The investigation also determined that these particular products were sold and marketed by straw company, Black Shade Interactive LLC.

62.    One of the Subject Accounts is held in the name of Black Shade Interactive LLC.

*Consumer Victim M.D.*

63.    In or around 2018, M.D., a resident of Suwanee, Georgia, signed up online for a free trial for a weight loss product.

64.    The online advertisement that he saw indicated that he would be charged a one-time shipping fee of $4.95.

65.    Before the trial period ended, however, M.D. noticed that his card had been charged full price for the product.

66.   When M.D. received the product, he could not find information for customer service inside the package to cancel.  He also could not locate contact information to cancel the product online.

67.   M.D. withdrew all of the money from his bank account in order to avoid additional unauthorized deductions from his account.

68.   After M.D. had withdrawn his funds, he noticed that there was a second unauthorized charge to his account, but the transaction was unsuccessful.

69.   M.D. received a new debit card to end the unauthorized charges.

70.   The investigation confirmed that on April 9, 2018, M.D. was charged $79.95 for "Lstylegarcinia."

71.   The investigation further determined that this particular product was sold and marketed by American Lifestyle Group LLC, which was owned and operated by organizer Kevin Stark.

72.   One of the Subject Accounts is held in the name of American Lifestyle Group LLC.

*Consumer Victim-B.C.*

73.   B.C., a resident of Hamilton, Texas, ordered two product samples as part of a "free trial" from a company's website for a one-time $4.95 shipping fee.

74. B.C. did not note any information on the website that indicated that he was actually signing up for a monthly subscription to the product, but fourteen days later, B.C. received two bottles of product and noticed that her card had been charged $92 for each bottle.

75. B.C. called the company's customer service and told them to cancel the order.

76. The next month, however, B.C.'s card again was charged $92 for two bottles of personal care products.

77. After the second set of charges appeared on B.C.'s statement, B.C.'s bank canceled her debit card and issued her a new card.

78. B.C. mailed the product back to the company but did receive a response.

79. The investigation confirmed that the particular products that B.C. received were marketed and sold by straw company, Gomez Nutrition LLC.

80. One of the Subject Accounts is held in the name of Gomez Nutrition LLC.

*Consumer-Victim J.R.*

81. In or around 2018, J.R., a resident of Chicago, Illinois, signed up for a "free trial" for a health and skin product from a website.  The website specifically stated that she would only be charged a one-time $4.95 shipping fee.

82. When J.R. later reviewed her bank statement before the "free trial" period had ended, she noticed two charges for the products in the amounts of $79.95 and $69.97.

83. J.R. attempted to call the company that she bought the product from to cancel the order but could not contact anyone.

84. J.R.'s financial institution canceled her card and gave her a new card.

85. The investigation confirmed that on April 10, 2018, J.R.'s card was charged for $79.95 for a Garcinia product and $69.97 for a health-related product.

86. The investigation further determined that these particular products were marketed and sold by American Lifestyle Group LLC, which was owned and operated by Kevin Stark.

87. One of the Subject Accounts is held in the name of American Lifestyle Group LLC.

**PRIOR FEDERAL SEIZURES**

88. Since June 2018, USSS has seized and administratively forfeited a total of $3,674,534.31 related to this scheme as follows: $2,299,705.60 from 109 different Bank of America accounts, $1,119,835.98 from 39 Humboldt accounts, $252,902.52 from one Morgan Stanley account and $2,090.21 from one straw buyer surrendering the funds.

89.   To date, USSS has received only one claim from an individual, claiming an ownership interest in the seized funds.  None of the other forfeitures have been contested.

90.   As relevant to the seizure of the Defendant Funds, because the Defendant Funds cumulatively total over $500,000, the USSS did not commence administrative forfeiture proceedings and referred this matter to the U.S. Attorney's Office to initiate civil judicial forfeiture proceedings.  *See* 19 U.S.C. § 1607.

## CONCLUSION

91.   Based on the foregoing, the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property that is or was derived from proceeds traceable to violations of 18 U.S.C. § 1349 (conspiracy to commit bank fraud and wire fraud),  18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1028 (identity fraud) and pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957 (money laundering), or is property traceable to such property.

WHEREFORE, the United States of America prays as follows:

1.      That the Court forfeit and condemn the Defendant Funds to the United

States;

2.      That the Court award the United States of America the costs of suit

incurred in this action; and

3.      That the Court grant such other relief as the Court deems just and proper.

This 15th day of December 2022.

Respectfully submitted,

RYAN K. BUCHANAN
    *United States Attorney*
    *600 U.S. Courthouse*
    *75 Ted Turner Drive SW*
    *Atlanta, GA 30303*
    *(404) 581-6000   fax (404) 581-6181*


/s/SEKRET T. SNEED
    *Assistant United States Attorney*
    Georgia Bar No. 252939
    sekret.sneed@usdoj.gov

ATTACHMENT A

| | Name | Account | Seized Amount |
|---|---|---|---|
| 1 | 365 WELLNESS LLC | REDACTED 1159 | $81,845.01 |
| 2 | 5 STAR NUTRITION LLC | REDACTED 1314 | $28,093.59 |
| 3 | AMERICAN LIFESTYLE GROUP LLC | REDACTED 8050 | $1,089,032.37 |
| 4 | ANADAM LLC | REDACTED 6517 | $32,094.09 |
| 5 | AQUALINA SKIN | REDACTED 5443 | $34,537.22 |
| 6 | ARCHER LIMITED LLC C/O SATURN MANAGEMENT | REDACTED 2493 | $7,710.29 |
| 7 | ARCTURAS AVE LLC | REDACTED 5289 | $5,537.56 |
| 8 | ARM HEALTH LLC | REDACTED 0353 | $30,110.39 |
| 9 | AVGI LIMITED LLC C/O SATURN MANAGEMENT | REDACTED 4114 | $2,670.98 |
| 10 | AXIS MEDIA LLC | REDACTED 4980 | $45,490.71 |
| 11 | BAFFIN LIMITED LLC | REDACTED 2354 | $14,565.89 |
| 12 | BEFIT WELLNES LLC | REDACTED 8796 | $24,990.81 |
| 13 | BIOLIFE MEDICA LLC | REDACTED 2759 | $300,158.75 |
| 14 | BJZ BRONX, LL | REDACTED 2991 | $6,449.88 |
| 15 | BLACK MARBLE MEDIA LLC | REDACTED 5650 | $21,774.86 |
| 16 | BLACK SHADE INTERACTIVE LLC | REDACTED 7386 | $32,507.61 |
| 17 | BLUE METAL MEDIA LLC | REDACTED 7356 | $22,237.10 |
| 18 | BLUE STAR MEDIA LLC | REDACTED 3444 | $15,625.78 |
| 19 | BLUESHADE NUTRITION LLC | REDACTED 0939 | $24,965.71 |
| 20 | BODY MIND MEDIA LLC | REDACTED 3054 | $25,227.14 |
| 21 | BONNE VIE SOLUTIONS INC | REDACTED 4442 | $4,081.48 |
| 22 | BRECS JAX LLC | REDACTED 4879 | $4,568.37 |
| 23 | CAMDON MEDIA | REDACTED 2435 | $5,541.50 |
| 24 | CELESE LLC | REDACTED 4607 | $3,296.42 |
| 25 | CELMAC ENTERPRISES LLC | REDACTED 1944 | $39,248.35 |
| 26 | CENTURION LABS, LLC | REDACTED 2452 | $2,905.44 |
| 27 | CIERA ENTERPRISES LLC CO/ SATURN MANAGEMENT | REDACTED 2448 | $12,768.61 |
| 28 | CJ WELLNESS LLC | REDACTED 4051 | $47,989.79 |
| 29 | COALA MOUNTAIN ENTERPRISES LLC C/O SATURN MANAGEMENT | REDACTED 4127 | $6,876.87 |
| 30 | COLLADO SUPPLEMENTS LLC | REDACTED 7474 | $46,976.20 |
| 31 | CRYSTAL NUTRITION LLC | REDACTED 6920 | $13,468.71 |
| 32 | CYM HOLDINGS LLC | REDACTED 5701 | $3,786.52 |
| 33 | DEJA HEALTH LLC | REDACTED 2625 | $1,496.76 |
| 34 | DIANA C GARCIA / DIANA E PEREZ | REDACTED 7682 | $1,132.76 |
| 35 | DIFID ENTERPRISES LLC C/O SATURN MANGEMENT | REDACTED 2419 | $7,349.56 |
| 36 | DIGITAL RAINBOW MEDIA, LLC | REDACTED 4434 | $13,800.75 |
| 37 | DOMINIC MADRID AND ASSOCIATES LLC | REDACTED 9133 | $5,260.21 |
| 38 | DOVER LABS LLC C/O RIGPA MANAGEMENT | REDACTED 3831 | $39,702.00 |
| 39 | DREBEAU ENTERPRISES, LLC | REDACTED 4645 | $4,474.67 |
| 40 | DULCE COMPANY C/O SATURN MANAGEMENT | REDACTED 2341 | $5,444.15 |
| 41 | EAGLE POWER TECHNOLOGIES INC | REDACTED 3305 | $93,521.78 |
| 42 | EVELYN MADRID DULANEY (SAV) | REDACTED 1638 | $749.25 |
| 43 | FORTE SERVICING LLC | REDACTED 9977 | $16,628.81 |
| 44 | FOXYFIT LLC | REDACTED 1039 | $19,306.62 |
| 45 | FRANKIE MARKETING GROUP LLC | REDACTED 4513 | $4,481.12 |
| 46 | FRESH NUTRA GROUP LLC | REDACTED 3519 | $52,036.53 |
| 47 | GABRIELLA C GUTIERREZ (DDA) | REDACTED 7994 | $1,500.00 |
| 48 | GABRIELLA C GUTIERREZ (SAV) | REDACTED 9531 | $4,858.29 |
| 49 | GCG MEDIA INC | REDACTED 9997 | $1,272.00 |
| 50 | GEN 7 LLC | REDACTED 1237 | $29,805.50 |
| 51 | GINGER SOLUTIONS LLC | REDACTED 3405 | $13,962.79 |
| 52 | GOLD STANDARD HEALTH LLC | REDACTED 8946 | $30,308.40 |
| 53 | GOMEZ NUTRITION LLC | REDACTED 4951 | $43,498.09 |
| 54 | GREEN SUMMER MEDIA LLC | REDACTED 5727 | $8,733.76 |
| 55 | GREEN TRUTH NUTRITION LLC | REDACTED 8547 | $27,834.91 |
| 56 | HARP BAY INC | REDACTED 3418 | $156,394.39 |
| 57 | HARTWELL JORDYN | REDACTED 5406 | $4,417.01 |

| | | | |
|---|---|---|---|
| 58 | HEALTH ENVY LLC | REDACTED8313 | $31,206.37 |
| 59 | HILO BRANDS LLC C/O RIGPA MANAGEMENT | REDACTED3857 | $1,465.52 |
| 60 | HOLISTIC NUTRITION LLC | REDACTED1140 | $29,366.35 |
| 61 | HPE INDUSTRIES INC | REDACTED3260 | $40,857.63 |
| 62 | HUNTS NUTRITION LLC | REDACTED1693 | $54,926.71 |
| 63 | HYDRA HEALTH 1 LLC | REDACTED2927 | $39,300.85 |
| 64 | IZWAR LLC | REDACTED1310 | $745,433.32 |
| 65 | JASMIN BALANCE INC | REDACTED9296 | $6,791.52 |
| 66 | JJE HEALTH LLC | REDACTED4886 | $57,280.49 |
| 67 | KERBE PRODUCTIONS INC (DDA) | REDACTED2150 | $1,621.69 |
| 68 | KEVIN ROBERT STARK (DDA) | REDACTED4956 | $6,921.91 |
| 69 | KJ PRODUCTS LLC | REDACTED4644 | $41,124.60 |
| 70 | KT COMMERCE LLC (DDA) | REDACTED1460 | $28,628.58 |
| 71 | LAG MEDIA LLC C/O SATURN MANAGEMENT | REDACTED4473 | $11,924.35 |
| 72 | LAPATSOX LLC | REDACTED5165 | $16,959.56 |
| 73 | LEWIS ALEX | REDACTED5595 | $7,950.96 |
| 74 | LIFE ESSENTIALS USA LLC | REDACTED3391 | $16,659.56 |
| 75 | LIQUID HEALTH 360 LLC | REDACTED5109 | $36,424.97 |
| 76 | LUCIA MEDIA LLC | REDACTED4253 | $19,480.79 |
| 77 | LUIS E VARGAS LOPEZ / CHRISTINA GUERRA | REDACTED8711 | $2,406.64 |
| 78 | LYNUTRA LLC | REDACTED7241 | $42,796.79 |
| 79 | M2 HEALTH LLC | REDACTED1888 | $14,966.77 |
| 80 | MARK HANSON & CO LLC | REDACTED7514 | $7,876.24 |
| 81 | MAYA RICH & CO LLC | REDACTED0154 | $1,711.16 |
| 82 | MELAINE E MAHONEY (SAV) | REDACTED4870 | $7,971.17 |
| 83 | MELAINE E MAHONEY (SAV) | REDACTED8421 | $2,201.18 |
| 84 | MENDOZA COSMETICS LLC | REDACTED0418 | $19,241.51 |
| 85 | MF FITNESS LLC | REDACTED2909 | $41,743.39 |
| 86 | MHF ONLINE LLC | REDACTED8296 | $10,364.81 |
| 87 | MISI NUTRITION LLC | REDACTED1855 | $52,065.09 |
| 88 | NATURE SELECT NUTRITION LLC | REDACTED9943 | $17,085.73 |
| 89 | NEURO ADVANTAGE LLC | REDACTED8519 | $1,892.91 |
| 90 | NUTRA CLOUD LLC | REDACTED6878 | $30,225.22 |
| 91 | NUTRA HEALTHCARE LLC | REDACTED3868 | $2,090.78 |
| 92 | NY FOCUS ENT LLC | REDACTED1745 | $3,032.72 |
| 93 | OAHU ADVERTISING | REDACTED8161 | $44,256.02 |
| 94 | OMAN MEDIA LLC C/O SATURN MANAGEMENT | REDACTED2516 | $21,901.78 |
| 95 | OPPLAND LABS LLC C/O RIGPA MANAGEMENT | REDACTED3909 | $2,953.32 |
| 96 | ORANGE BLOSSOM MEDIA LLC | REDACTED9759 | $29,117.11 |
| 97 | ORANGE SUN MEDIA LLC | REDACTED4296 | $10,225.64 |
| 98 | PAPADOC INC | REDACTED4455 | $4,979.83 |
| 99 | PAPOUA MEDIA LLC C/O SATURN MANGEMENT | REDACTED2422 | $20,669.13 |
| 100 | PINK SUMMER COSMETICS LLC | REDACTED3379 | $3,157.87 |
| 101 | PREMIERE HEALTH PRODUCTS LLC | REDACTED1071 | $3,576.99 |
| 102 | PULSE5 MEDIA LLC | REDACTED8067 | $4,903.22 |
| 103 | PURE WELLNESS LLC | REDACTED3250 | $39,124.01 |
| 104 | RED CIRCLE MEDIA LLC | REDACTED0264 | $9,416.28 |
| 105 | REGINIX NUTRA LLC | REDACTED8872 | $41,101.07 |
| 106 | REJUVENATION SKY LLC | REDACTED0577 | $1,000.00 |
| 107 | REVIVE NUTRA LLC | REDACTED3398 | $5,693.06 |
| 108 | RIGPA MANAGEMENT | REDACTED7804 | $35.00 |
| 109 | SILVER STAR MEDIA LLC | REDACTED9393 | $23,627.61 |
| 110 | SJ HEALTH LLC | REDACTED7811 | $51,227.13 |
| 111 | SKIN SCIENTIFIC LLC | REDACTED9958 | $10,996.03 |
| 112 | SKIN SCIENTIFIC LLC | REDACTED5170 | $3,823.20 |
| 113 | SLADE NUTRITION LLC | REDACTED6369 | $14,382.12 |
| 114 | SOLAMON MEDIA LLC | REDACTED4101 | $14,902.02 |
| 115 | SPIN87 LLC | REDACTED8217 | $1,583.43 |

| # | Name | Account | Amount |
|---|------|---------|--------|
| 116 | STAR NANOTECH | REDACTED 3599 | $1,983.76 |
| 117 | STEEL BLADE MEDIA LLC | REDACTED 5951 | $32,717.19 |
| 118 | SUPPLEMENTS MEDIA LLC | REDACTED 9710 | $55,360.62 |
| 119 | SUPREME HEALTH USA LLC | REDACTED 5988 | $1,641.17 |
| 120 | TIME CREATIVE VENTURES LLC | REDACTED 1488 | $25,430.58 |
| 121 | TR2 WELLNESS LLC | REDACTED 7945 | $36,758.53 |
| 122 | UB VENTURES LLC | REDACTED 7027 | $47,535.24 |
| 123 | ULTRA LIVE HEALTH LLC | REDACTED 9091 | $3,946.00 |
| 124 | VIALE MEDIA LLC C/O SATURN MANAGEMENT | REDACTED 2370 | $8,914.86 |
| 125 | VIXEN VIRGIN HAIR INC | REDACTED 1670 | $1,216.92 |
| 126 | WELLNESS HOLDINGS LLC | REDACTED 7136 | $55,037.63 |
| 127 | WHITE GLASS MEDIA LLC | REDACTED 7768 | $24,391.89 |
| 128 | WHITE STORM GROUP LLC | REDACTED 3600 | $11,374.62 |
| 129 | ZEMELE SUPPLEMENTS LLC | REDACTED 7432 | $66,979.39 |
| 130 | ZEN HEALTH LLC | REDACTED 5661 | $2,327.82 |
| | | **TOTAL** | **$4,815,369.94** |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

$4,815,369.94 IN TOTAL FUNDS SEIZED FROM 130 ACCOUNTS MAINTAINED AT BANK OF AMERICA, MORE PARTICULARLY DESCRIBED IN ATTACHMENT A,

    Defendants.

Civil Action No.

## **VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Talmadge Mincey III, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This _14_ day of December, 2022.

_T.W. Mincey AAA_
_____
Talmadge Mincey III
Special Agent
United States Secret Service